UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| DEBORAH K. KING, | Civil No. 05-388 (JRT/FLN) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| DICKEY JOE TURNER, | |
| Defendant. | |

Robert Bennett and Ryan O. Vettleson, **FLYNN GASKINS & BENNETT, LLP**, 333 South Seventh Street, Suite 2900, Minneapolis, MN 55402, for plaintiff.

C. David Dietz, Assistant United States Attorney, **RAMSEY COUNTY ATTORNEY**, 50 West Kellogg Boulevard, Suite 560, St. Paul, MN 55102, for defendant.

Plaintiff Deborah King filed this lawsuit against defendant Dickey Joe Turner, who is a deputy in the Ramsey County Sheriff's Department. In her complaint, plaintiff alleges that on February 26, 2003 defendant used excessive force against her in violation of her constitutional rights. On November 16, 2006, a jury returned a verdict for plaintiff and against defendant. The jury awarded plaintiff $114,508.90 in actual damages and $15,000.00 in punitive damages.

This matter is before the Court on defendant's motion for post judgment relief pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure. Defendant argues that the Court erred when it excluded evidence relating to a May 6, 2003 incident that involved plaintiff. For the reasons explained below, the Court denies defendant's motion.

## BACKGROUND

On February 26, 2003, plaintiff received two serious fractures and a dislocation of her left wrist. Whether the injury was caused by defendant's use of excessive force was the issue for trial in this case. At the start of trial, the Court granted plaintiff's motion to exclude evidence relating to an incident on May 6, 2003.

On May 6, 2003, plaintiff was at home in her apartment when she was assaulted and cut her head. She tried without success to stop the bleeding on her own, and in the process drank several beers to dull the pain. Her son ultimately called the paramedics, who arrived with police officers. Plaintiff demanded that the police officers leave, and she went with the paramedics to the emergency room. Both the paramedics and the hospital staff noted plaintiff's use of alcohol. She received staples to close the wound. The emergency room doctor took a history and examined plaintiff according to standard protocol. Plaintiff specifically denied that she experienced pain in her arm. The physical examination stated that there were no wounds to her extremities, but noted that she was wearing a splint for a recent arm fracture.

On May 12, 2003, plaintiff had an appointment with Dr. Putnam, who was her treating physician for the fracture and dislocation. The report from this appointment states that the x-rays showed "excellent healing of the distal radius fracture." (Pl.'s Ex. 6.) The report continues, "the fracture appears to be well healed with excellent, near anatomic alignment." (*Id.*) It also states, "She does have some mild lucency around the bicortal screws which will be evaluated." (*Id.*) The radiology report stated, "Internal

fixation of distal radial fracture held in good position unchanged in appearance compared to 4/7/2003." (Pl.'s Ex. 7.) Later on May 12, 2003, plaintiff had an appointment with Dr. Maag, who is her primary care physician. The report of Dr. Maag states that plaintiff was complaining about pain and tingling in her hand and that "these symptoms have worsened over the past week . . . ." (Def.'s Ex. 10.)

The parties obtained expert opinions on the relevance of the May 6, 2003 incident to the injury plaintiff received on February 26, 2003. Dr. Dowdle, an expert for defendant, testified that it is "possible" that plaintiff reinjured her wrist on May 6, 2003. (Dowdle Dep. at 24.) However, he also affirmed that he "cannot offer an opinion to a reasonable degree of medical certainty that [plaintiff] injured her left wrist in any way on May 6, 2003." (Dowdle Dep. at 75.) Dr. Mateo, an expert for plaintiff, testified that any link between the May 6, 2003 incident and any further injury would be "speculative" but that it could not be eliminated as a possibility. (Mateo Dep. at 49.)

## ANALYSIS

### I. STANDARDS OF REVIEW

Under Rule 59(a), "[a] new trial may be granted . . . on all or part of the issues . . . in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States . . . ." Fed. R. Civ. P. 59(a). In evaluating a motion for a new trial pursuant to Rule 59(a), the key question is whether the verdict is "so contrary to the evidence as to amount to a miscarriage of justice." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996).

Under Rule 50, judgment as a matter of law is appropriate if no reasonable juror could have returned a verdict for the nonmoving party. *Weber v. Strippit, Inc.*, 186 F.3d 907, 912 (8th Cir. 1999). In analyzing a Rule 50 motion, the Court must consider the evidence in the light most favorable to the nonmovant, resolve all factual conflicts in the nonmovant's favor, and give the nonmovant the benefit of all reasonable inferences. *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1002 (8th Cir. 2000). However, the nonmovant is not entitled to "the benefit of unreasonable inferences, or those at war with the undisputed facts." *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 932 (8th Cir. 1999).

## II.   EXCLUSION OF EVIDENCE OF MAY 6, 2003 INCIDENT

Defendant claims that the Court erred in granting plaintiff's motion to exclude evidence relating to the May 6, 2003 incident. Specifically, defendant argues that the May 6, 2003 incident is relevant to show that defendant did not cause all the damages claimed by plaintiff. Defendant further argues that the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. The Court carefully considered the briefing and arguments made by counsel when it ruled on this issue at the start of trial. In his post trial motion, defendant offers no reason for the Court to reconsider its ruling.

Evidence of the May 6, 2003 incident has at most minor relevance. There is no medical evidence that plaintiff suffered any injury to her wrist on May 6, 2003. To the contrary, the evidence shows that plaintiff was wearing her splint when the physical

altercation took place, and that plaintiff told medical staff that she experienced no pain in her arm. A subsequent appointment with Dr. Putnam revealed "excellent" healing of the wrist. Because there is no medical evidence of further injury to the wrist, any possible relevance of the incident comes only through a weak inference.

Even assuming that the evidence is relevant, the evidence was properly excluded under Rule 403 because it would unfairly prejudice plaintiff. *See* Fed. R. Evidence 403. Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." *Id.* In this context, "unfair prejudice" means an "undue tendency to suggest decision on an improper basis." *Manatt v. Union Pac. R.R.*, 122 F.3d 514, 517 (8th Cir. 1997). As explained above, the probative value of facts relating to the May 6, 2003 incident is small because there is no medical evidence tying the incident to further injury of plaintiff's wrist. The danger of unfair prejudice, on the other hand, is quite high. There was a danger that the jury could have used facts of the incident to conclude that plaintiff is a bad person because she was intoxicated and was involved in a physical confrontation in the middle of the night. Admission of evidence of the May 6, 2003 incident could have created an unfavorable impression of plaintiff and caused jurors to decide the case in defendant's favor simply because they did not like plaintiff. Further, it appears plaintiff had some kind of confrontation with the police when they arrived at her apartment. However, these facts have no bearing on plaintiff's behavior around police on February 26, 2003. Indeed, plaintiff's distrust of the police that was evident on May 6, 2003 was likely caused by the events of February 26, 2003. If the evidence had been admitted, jurors may have

inappropriately used facts from the May 6, 2003 incident to conclude that plaintiff behaved inappropriately when she interacted with the police on February 26, 2003.

Finally, defendant argues that the Court should alter the judgment to deduct $2,048 from the award of compensatory damages because medical bills relating to the May 6, 2003 incident should not have been awarded. However, the only evidence in the record regarding the amount of medical bills came from Dr. Putnam, who testified that all of the costs for treatment listed in plaintiff's exhibit were reasonable and necessary. Defendant failed to cross-examine Dr. Putnam regarding charges from the May 6, 2003 incident, or otherwise generate evidence consistent with defendant's argument. Because defendant offered no evidence in the record disputing the charges, the Court finds no basis for altering the judgment to exclude the charges.

### ORDER

Based on the foregoing, all of the records, files and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for post judgment relief [Docket No. 67] is **DENIED**.

DATED:   February 14, 2007                             s/ John R. Tunheim    _
at Minneapolis, Minnesota.                                 JOHN R. TUNHEIM
                                                      United States District Judge